Argued and submitted September 18, 2009, decisions of Court of Appeals
are affirmed February 4, 2010

EDGAR LEE WEEMS,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A128497; SC S056672)

MICHAEL A. ROBERTS,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A124125; SC S056741)
(Consolidated for Argument and Opinion)

227 P3d 671

Carolyn Bys, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With her on the briefs were Peter Gartlan, Chief Defender, and Irene B. Taylor, Deputy Public Defender.

Jeremy C. Rice, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

LINDER, J.

**LINDER, J.**

The principal issue presented in these two cases is whether the Board of Parole and Post-Prison Supervision (the board) may consider an offender's full criminal history and personal background in imposing special conditions of post-prison supervision, or whether the board must limit its review to the facts and circumstances of an offender's current crimes of conviction.[1] In these cases, based on each petitioner's criminal history, the board imposed special conditions that are appropriate for sex offenders, even though petitioners were currently serving sentences for nonsexual crimes. We conclude, as did the Court of Appeals, that the board is authorized to impose special conditions of post-prison supervision based on an offender's criminal history and background, rather than based only on the current crimes of conviction. *Weems v. Board of Parole*, 221 Or App 70, 75, 190 P3d 381 (2008); *Roberts v. Board of Parole*, 221 Or App 278, 282, 190 P3d 397 (2008). We further conclude, as did the Court of Appeals, that the record before the board adequately supported the board's decision to impose the particular special sex offender conditions that it imposed in each of these cases. *Weems*, 221 Or App at 76-77; *Roberts*, 221 Or App at 282. We therefore affirm the decisions of the Court of Appeals.

In describing the facts and procedural history of the two cases before us, we begin with petitioner Weems's case, because the Court of Appeals decided that case first, and then relied on its decision in *Weems* to resolve petitioner Roberts's case. *See Weems*, 221 Or App 70; *Roberts*, 221 Or App at 282.

Weems was convicted of several drug crimes and sentenced to a period of incarceration for those crimes, followed by post-prison supervision. Although none of Weems's current crimes of conviction was a sexual offense, his criminal history included previous charges of sexual offenses. In particular, he had been arrested in 1991 on charges of sodomy in the first and second degrees. The sodomy charges were dismissed, for reasons that are not a matter of record. In

---

[1] The cases proceeded individually before the board and the Court of Appeals, and each petitioner individually petitioned this court for review. After granting those petitions, we consolidated the cases for purposes of argument and decision.

1993, Weems was arrested on charges of sexual abuse in the first and second degrees. Those charges were resolved through a plea agreement in which Weems pleaded guilty to the lesser crime of menacing in exchange for dismissal of the sex abuse charges. In addition to those sexual offense charges, Weems had two previous convictions for endangering the welfare of a minor and other drug convictions.

Before Weems's scheduled release to post-prison supervision for his current drug convictions, the Department of Corrections (the DOC) prepared a proposed release plan for him. In submitting that proposed plan to the board, the DOC included Weems's 2004 sex offender risk assessment, which outlined Weems's past sexual offense charges and included information that Weems had reported that the alleged victim of the 1991 sodomy charges was the 9- or 10-year-old son of one of Weems's friends. In the release plan, in addition to standard conditions, the DOC recommended several special conditions of post-prison supervision that it believed were appropriate for Weems based on his criminal history. The special conditions included four so-called "sex offender" conditions that are among those that are mandatory for individuals who are on post-prison supervision after committing a sexual offense.[2] The board accepted the DOC's recommendation and ordered Weems to comply with the following sex offender special conditions:

"3.  Offender shall have no contact with minor females and shall not frequent any place where minors are likely to congregate * * * without prior written approval from their supervision officer. PER PO.

"4.  Offender shall have no contact with minor males and shall not frequent any place where minors are likely to congregate * * * without prior written approval from their supervising officer. PER PO.

---

[2] ORS 144.102(3)(b) provides (as it did in 2003) that, if a person is on post-prison supervision following conviction of a sexual offense, the board shall include all of several special conditions of post-prison supervision set out in subparagraphs of the statute. The list contained in the statute, which is much more extensive than the four imposed in Weems's case, are mandatory for persons who are on supervision following conviction of a sexual offense.

"5. Offender shall submit to random pol[y]graph tests as part of a sex offender surveillance program. * * * PER PO.

"6. Offender shall enter and complete or be successfully discharged from a recognized and approved sex offender treatment program. * * * PER PO."[3]

Weems requested administrative review by the board. In his request, Weems challenged the sex offender special conditions, arguing that the board could not impose them in his case, because he had never committed or been convicted of a sexual offense. The board granted Weems's request for administrative review, but denied relief. In its order, the board explained that it has authority to impose sex offender special conditions based on an offender's individual circumstances. It further explained why it imposed sex offender special conditions in Weems's case:

"On September 6, 1991, you were arrested for the crimes of Sodomy in the First Degree and Sodomy in the Second Degree. These charges were dismissed. On July 22, 1993, you were arrested for the crimes of Sexual Abuse in the First Degree and Sexual Abuse in the Second Degree. You were convicted of the lesser included charge of Menacing. It was these individual circumstances that led the board to determine that it was necessary to impose the contested special conditions in your case. The board took into consideration the age of the offenses when it imposed the special conditions to be implemented at the discretion of your supervising officer. Consequently, if your supervising officer does not deem it appropriate to implement the special conditions imposed by the board in your Order of Supervision, then you will not have to comply with those conditions. However, if your supervising officer determined that these special conditions were appropriate to implement, then you would have to comply with these conditions."

Weems sought judicial review in the Court of Appeals, raising, as his principal challenge, the issue of the board's authority to impose sex offender special conditions on

---

[3] The parties agree that "PER PO" is shorthand for "PER PAROLE OFFICER." As we later explain, the board imposed identical special conditions in Roberts's case. In doing so, however, it used the notation "PER PAROLE OFFICER" instead of the shorthand that it used in Weems's case.

an offender whose current crime of conviction is not a sexual offense. Weems alternatively argued that, even if the board may impose special conditions based on an offender's criminal history and personal background, the board's decision to impose the sex offender conditions in his case was not supported by the record that the board had before it.

Relying on this court's decision in *Martin v. Board of Parole*, 327 Or 147, 159, 957 P2d 1210 (1998), the Court of Appeals observed that the board has broad discretionary authority under ORS 144.102(3)(a)[4] to impose special conditions that serve public safety and the reformation of the individual offender. *Weems*, 221 Or App at 75. The board does not abuse its delegated authority under the statute, the Court of Appeals concluded, unless there is no "discernable relationship" between the special conditions of supervision that the board imposes and "either petitioner's individual circumstances or the protection of the public." *Id.* Consequently, the Court of Appeals held that the board has the statutory authority to impose sex offender special conditions on someone who is not a convicted sex offender and who is not under post-prison supervision for a sexual offense. *Id.*[5]

The Court of Appeals then reviewed the board's explanation for imposing sex offender special conditions in Weems's case. In the Court of Appeals' view, the board took into account the age and lack of detail about Weems's past

---

[4] We set out the statute and discuss it at greater length later in our decision. Because the board issued its order in Roberts's case in 2003 and in Weems's case in 2004, unless otherwise noted, all references to the Oregon Revised Statutes are to the 2003 versions.

[5] In their petitions for review, petitioners framed, as their first question presented, whether the Court of Appeals incorrectly used a "no discernible relationship" standard to test whether the record in these cases supports the board's imposition of the challenged special conditions. Petitioners do not present that question in their briefs on the merits. As our description of the Court of Appeals decision demonstrates, the Court of Appeals did not use that terminology in connection with the standard of review for the board's particular orders in these cases. Instead, the court was describing the board's legal authority under ORS 144.102(3)(a) to consider information beyond the facts and circumstances of an offender's crime of conviction in imposing special conditions of post-prison supervision. We do not endorse the Court of Appeals' particular terminology in that regard. As we will later describe, however, we agree with the court's conclusion that the board is, in fact, authorized under the statute to consider an offender's personal history and background, in addition to the offender's crime of conviction, in imposing special conditions of post-prison supervision.

charges by imposing the sex offender special conditions, but doing so "contingent on the supervising officer's evaluation." *Id.* at 76-77. The Court of Appeals concluded that Weems's four prior charges for sexual offenses and his conviction for menacing provided adequate support for the board's order. *Id.* at 77.

Roberts raised the same challenge to the board's authority that Weems had raised. Roberts was serving sentences for assault and weapons offenses. As was true of Weems, although none of Roberts's current crimes of conviction was a sexual offense, his criminal history included previous charges of sexual offenses. In particular, Roberts had been arrested in 1992 for rape in the third degree, but that charge was later dismissed. In 1993, Roberts was arrested for several sexual offenses, including sexual abuse in the first degree, sodomy in the first degree, and rape in the first degree. Those charges resulted in a conviction of sexual misconduct, an offense that includes, as an element, sex with a victim under the age of 18.[6] Roberts also had past arrests at various times for nonsexual offenses.

■ The board imposed the same four sex offender special conditions of post-prison supervision that we quoted from Weems's order. Roberts requested administrative review by the board, arguing that the board may impose those conditions only on offenders who are on post-prison supervision for a sexual offense, which he was not. As in Weems's case, the board granted review, but denied relief. In doing so, the board explained:

"Pursuant to ORS 144.102(3)(a), the board may establish any special conditions it determines are necessary because of the individual circumstances of the person on [post-prison supervision]. On March 24, 1995, Mr. Roberts was convicted of Sexual Misconduct pursuant to ORS 163.445. On November 16, 1993, Mr. Roberts was arrested for the crimes of Rape in the First Degree, Sodomy in the First Degree, and Sexual Abuse in the First Degree. It was

[6] *See* ORS 163.445(1) ("A person commits the crime of sexual misconduct if the person engages in sexual intercourse or deviate sexual intercourse with an unmarried person under 18 years of age.").

these individual circumstances that led the board to determine it was necessary to impose the contested special conditions in Mr. Roberts' case. The board recognized that Mr. Roberts was not being supervised on a sex offense when it indicated that the contested special conditions would be implemented at the discretion of the supervising officer. If the supervising officer concludes that the contested special conditions are not necessary, then they will not be implemented. However, there was a legitimate basis for the board to impose the special conditions on Mr. Roberts' Order of Supervision."

Roberts petitioned for judicial review. Before the Court of Appeals, he challenged both the board's authority to impose sex offender special conditions for persons on supervision for crimes other than sexual offenses and the adequacy of the record to support those conditions in his case. The Court of Appeals resolved Roberts's arguments "for the reasons expressed in *Weems.*" *Roberts*, 221 Or App at 282.[7]

■     On review, petitioners renew the arguments that they made to the Court of Appeals, although (as we later note) they expand on those arguments in certain regards. We begin with their argument that the board may impose special conditions based only on the "facts of the offense" and the "offender's characteristics that contributed to the commission of the offense."

---

[7] Because petitioners completed their terms of post-prison supervision and were discharged before the Court of Appeals issued its decisions, the Court of Appeals also considered whether the cases were moot. It held that petitioners' claims regarding the special conditions restricting contact with minors are moot, but that their claims regarding the board's imposition of polygraphs and sex offender treatment are not. *Weems*, 221 Or App at 72 n 1; *Roberts*, 221 Or App at 280-82. We agree. Any decision by the Court of Appeals or this court regarding the conditions restricting contact with minors will not have any practical effect on petitioners' rights. *See Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993) (concluding that a justiciable controversy exists if (1) parties' interests are adverse and (2) court's decision in matter will have some practical effect on rights of the parties). However, petitioners' challenges to the sex offender special conditions requiring them to submit to polygraphs and to participate in sex offender treatment are not moot, because the state is seeking reimbursement from petitioners for the costs of those conditions. Thus, the results of petitioners' challenges to those special conditions will affect their obligation to pay for the costs of their required polygraphs and sex offender treatment. The board does not take issue with the Court of Appeals' conclusions in those regards. Because we agree with the Court of Appeals' analysis, we do not discuss it further.

ORS 144.102(3)(a) is the source of the board's authority to impose special conditions of post-prison supervision. It provides:

> "The board or supervisory authority may establish special conditions as the board or supervisory authority shall determine are necessary because of the individual circumstances of the person on post-prison supervision."

Petitioners rely on the phrase "individual circumstances" in ORS 144.102(3)(a). Invoking the dictionary definitions of both "individual" and "circumstances," petitioners urge that the board is authorized to consider only the events that led to a person's release on post-prison supervision—that is, the circumstances of the person's current crimes of conviction.

We disagree. The key words of the statute are "individual circumstances *of the person.*" (Emphasis added.) The statute thus focuses, specifically, on the offender, not the offense. That, in turn, naturally implies that the board is to consider more generally the offender's personal history and background. To be sure, the individual circumstances of the person on supervision would include the circumstances of that person's current crimes of conviction, because that is part of the offender's history and background. But by authorizing the board to impose special conditions of post-prison supervision based on the individual circumstances of "the person" on supervision, rather than the circumstances of the offense, the legislature plainly intended the board to consider more than just the narrow circumstances of an offender's current crimes of conviction.

Context confirms that understanding. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (starting point for statutory interpretation is text and context). ORS 144.102(3)(a) is one of several statutes bearing on the process by which the board considers and adopts conditions of post-prison supervision for individual offenders. That process begins with the DOC. Before the offender's release, the DOC must prepare a proposed release plan under ORS 144.096(1)(a), which includes any special conditions of post-prison supervision as may be necessary "to promote public safety" and "to assist the reformation of the inmate." ORS 144.096(3)(d), (f). The board then reviews the proposed

release plan. In performing its review, the scope of what the board may consider is extensive. Under ORS 144.098(1), the board may interview the individual offender and also may consider:

"(a) Reports of any physical, psychiatric or psychological examinations of the inmate;

"(b) The presentence investigation report specified by ORS 144.791 or, if no such report has been prepared, a report of similar content prepared by institutional staff;

"(c) The record of the inmate's conduct during confinement; and

"(d) Any other information relevant to the inmate's reintegration into the community that may be submitted by the inmate, the inmate's attorney, the victim of the crime, the Department of Corrections, local corrections agencies or any other person."

After completing that review, the board must specify "in writing the conditions of post-prison supervision." ORS 144.102(1). In addition to standard conditions authorized by statute for all offenders,[8] the board, as already described, may impose special conditions when the board determines those conditions to be "necessary because of the individual circumstances of the person on post-prison supervision." ORS 144.102(3)(a).

The statutes governing the process for the board's review and imposition of the special conditions of post-prison supervision underscore the offender-specific focus of the board's authority. The statutory scheme does not limit the board's review to the facts and circumstances of an offender's current crime of conviction (which the presentence investigation report would provide). Instead, the board is expressly authorized to consult information about the offender's overall physical and mental health, the offender's behavior while incarcerated and, significantly, "any other information" from any source "relevant to the inmate's reintegration into the

---

[8] Under ORS 144.102(2), the board is authorized to impose certain standard conditions on any offender being released on post-prison supervision, such as a requirement that the offender answer all reasonable inquiries by his supervisory authority, report to his parole officer as directed, obey all laws, and not own, possess, or control a weapon. ORS 144.102(2)(c), (d), (e), and (f).

community." ORS 144.098(1)(d). We therefore agree with the Court of Appeals, and we hold that ORS 144.102(3)(a) authorizes the board to consider the individual circumstances and nature of the offender, and not just the offender's current crime or crimes of conviction, in determining what special conditions of post-prison supervision are appropriate to impose for a particular offender.[9]

■      We turn to petitioners' alternative arguments that, even if the board had authority to look beyond their current crimes of conviction in imposing special conditions of post-prison supervision, the records before the board do not support the board's imposition of the challenged conditions in their particular cases. Petitioners point to the express wording of ORS 144.102(3)(a), which authorizes the board to impose special conditions if they are "necessary" based on the individual circumstances of the person to be supervised. According to petitioners, when, as here, the board relies on circumstances other than those of the current crime of conviction, the board must have before it evidence of "recent, significant conduct" that raises "imminent" concerns for public safety or an offender's reformation. Petitioners urge that the evidence on which the board relied—*i.e.*, their past histories of criminal charges and convictions—was too remote and too

---

[9] Petitioners offer legislative history that they believe supports their interpretation. *See Gaines*, 346 Or at 171-72 (parties are entitled to proffer legislative history to court regardless of whether statute is ambiguous; evaluative worth of legislative history is for court to decide). As we have cautioned, however, a party seeking to overcome the seemingly plain and unambiguous text of a statute has a "difficult task before it." *Id.* at 172. In this instance, the legislative history reinforces our understanding of ORS 144.102(3)(a) and its context, rather than contradicts it. The statute was modeled on the parallel provisions of ORS 144.270 (1973), which governed the board's authority to impose special conditions on parole and which were enacted as part of a larger bill in 1973. Or Laws 1973, ch 694, § 7. Several of the provisions of that larger 1973 bill were drawn from the Model Penal Code (MPC) and tracked the MPC provisions *verbatim*, while other provisions were deliberately drafted to differ in their terms. Tape Recording, House Committee on Judiciary HB 2110, Mar 20, 1973, Tape 11, Side 2 (statements from board member Terry Johnson). The statute authorizing the board to impose special conditions of parole did not follow the MPC, which expressly required special conditions to be specifically "related to the cause of [the inmate's] offense[.]" Model Penal Code § 305.13(1) (Proposed Official Draft 1962). The legislature instead authorized special conditions of parole based on the "individual circumstances of the parolee." ORS 144.270(3) (1973). The legislature's choice to depart from the terms of the MPC in that regard confirms our understanding that the Oregon statute was intended to confer broader authority on the board than the MPC would have conferred.

limited in detail to support imposition of sex offender special conditions in their particular cases.

Petitioners' arguments thus raise a further legal point about what ORS 144.102(3)(a) requires. Essentially, their position is that the statute requires the board to rely on evidence of a particular quality and kind—namely, evidence of "recent, significant conduct" that raises "imminent" concerns for public safety or an offender's reformation. We disagree that the statute places those legal limits on what the board may consider. As we have already discussed, textually, ORS 144.102(3)(a) directs the board in general terms to impose special conditions based on what is "necessary because of the individual circumstances of the person on post-prison supervision." In *Martin*, we explained that the term "necessary" in that context takes its meaning from the other statutes that identify the permissible objectives that special conditions should serve. 327 Or at 159. The key statute in that regard is ORS 144.096, which directs the DOC to propose special conditions for the board's review based on what may be necessary *"to promote* public safety" and *"to assist* the reformation of the inmate."[10] ORS 144.096(3)(d), (f) (emphasis added). This court concluded in *Martin* that the legislature did not intend the board, given "the vagaries of human experience," to tailor special conditions narrowly to address only certain or immediate risks to public safety or offender reformation; instead, the legislature has granted the board broad discretion to impose special conditions to address any substantial danger in those regards. 327 Or at 159-60. *Martin* thus directly refutes the idea that the board may impose special conditions of post-prison supervision only when a danger to public safety or offender reformation is "imminent" in nature.

---

[10] In *Martin*, this court relied on the Court of Appeals' examination of the statutory scheme, which had included ORS 144.096(3), and endorsed the Court of Appeals' conclusion that

" 'the "necessity" of special conditions must be determined in reference to the statutory objectives that are repeated throughout the * * * statutes, namely, the protection of public safety and the reformation of the offender.' "

327 Or at 159 (quoting *Martin v. Board of Parole*, 147 Or App 37, 43, 934 P2d 626 (1997)).

We also reject petitioners' argument that the board, if it considers information other than the current crime of conviction, may impose special conditions based only on an offender's "recent, significant conduct." Again, ORS 144.102(3)(a), in conferring on the board the authority to impose special conditions of post-prison supervision, contains no such limitation. To the contrary, as we have described, the board is expressly authorized to consult wide-ranging information about an offender's personal background and full criminal history. ORS 144.098(1). That information specifically includes "any * * * information relevant to the inmate's reintegration into the community." ORS 144.098(1)(d). It also includes an offender's presentence report (ORS 144.098(1)(b)), which relates an offender's criminal history *preceding* his sentencing on his current crimes of convictions, and thus inherently encompasses dated information, rather than conduct that is close in time to an offender's release on post-prison supervision. To conclude that the board may not consider certain information based solely on the age of that information would be inconsistent with what the legislature has expressly authorized.

Beyond that legal issue about what the statute requires, petitioners' arguments are more record-specific and are directed to what special conditions the board permissibly could impose in their particular cases. Petitioners do not present their arguments in terms that track the familiar standards by which appellate courts review agency orders—that is, a review for abuse of discretion, substantial evidence, or substantial reason. *See* ORS 144.335(3) (standards of judicial review that apply to agencies under ORS 183.482(8) apply to judicial review of board orders); ORS 183.482(8)(b) and (c) (review for abuse of discretion and substantial evidence); *Martin,* 327 Or at 157 (board's order must provide "some kind of an explanation connecting the facts of the case (which would include the facts found, if any) and the result reached"). For the sake of analytical clarity, therefore, we begin by examining which of those problems are implicated by the arguments that petitioners make.

The issue is not whether the board adequately set forth its reasoning in its orders—that is, whether the board's orders are supported by substantial reason. In each order, as

we quoted earlier, the board identified the particular facts on which it relied—*i.e.*, the specific past sexual offense charges in each petitioner's criminal history and any convictions that resulted from those charges—as its reason for imposing the sex offender special conditions of post-prison supervision. The board's obligation to set out its reasoning sufficient for appellate review required it to do no more.

■■ Neither is this an issue of whether the board abused its discretion. As we explained in *Martin*, whether the board abuses its discretion by imposing a particular special condition depends on whether the board's choice is "within the permissible range of choices" that the legislature has authorized the board to make. *Id.* at 160. That inquiry, this court further observed, "has meaning only in the context of the statutory objectives that the [b]oard is to pursue." *Id.* at 159 (internal quotations omitted). If the board determines, based on adequate evidence, that an offender to be released on post-prison supervision is at risk of committing a sexual offense in the future, the imposition of sex offender special conditions is a logical way for the board to further the safety of the public, as well as the offender's reformation and "reintegration into the community." ORS 144.098(1)(d). The board would be entitled to conclude in such a case that sex offender special conditions are necessary and, therefore, within the range of permissible choices that the board could make.

But did these records provide an adequate basis for the board to determine in each case that petitioners are at risk of committing future sexual offenses? That is the case-specific question that petitioners' arguments most directly pose. In each of these cases, the board reasoned that petitioner's individual criminal history provided reason for concern sufficient to justify imposition of the four sex offender special conditions of post-prison supervision. In effect, the board implicitly found in each case that petitioners' history of past charges of sexual offenses, and any convictions resulting from those charges, was reason to believe that each petitioner was at risk of committing sexual offenses in the future.

Petitioners' arguments take aim at that finding by urging, in essence, that the board could not reasonably so

conclude based on the records before it. According to petitioners, for two reasons, the board should not have given any weight to the events on which it relied. First, petitioners urge, it was "inherently unreasonable" for the board to rely on "unproven allegations" that petitioners had committed sexual offenses in the past. Second, according to petitioners, the events were "remote." In that regard, petitioners suggest that, because the events occurred several years ago and petitioners have not been charged since with additional sexual offenses, their past criminal charges fail to reveal a history or pattern of conduct that would suggest an ongoing risk of future sexual offenses. Correctly framed, then, each petitioner's challenge is that the board's order is not supported by substantial evidence. *See Einstein v. PSRB*, 330 Or 121, 127, 998 P2d 654 (2000) (describing "substantial evidence" standard of review); ORS 183.482(8)(c) ("substantial evidence exists to support a finding when the record, viewed as a whole, would permit a reasonable person to make that finding").

Petitioners' argument is similar to the one that this court addressed in *Einstein*. In that case, the issue was whether substantial evidence supported a finding by the Psychiatric Security Review Board (PSRB) that the petitioner suffered from a mental disease at the time of the hearing on his request to be discharged on conditional release. There, the petitioner argued that the PSRB had relied only on evidence of the petitioner's past mental condition and that the record contained no present diagnosis to support the PSRB's finding of a present condition.

In rejecting the petitioner's substantial evidence challenge, this court emphasized the nature of the court's review. Contrary to the Court of Appeals' reasoning, it did not matter whether it was " 'equally as inferable from that evidence that [the petitioner] no longer suffers from a mental disease as it is that the disease continues but is in remission.' " *Id.* at 126 (quoting *Einstein v. PSRB*, 153 Or App 522, 525-26, 958 P2d 843 (1998)). Properly, the issue was only whether, based on the record before the PSRB, "a reasonable person could find, either directly or by permissible inference, that [the petitioner] continues to suffer from a mental disease or

defect[.]" *Id.* at 127. In the petitioner's case, there was no evidence of his disease being symptomatic in the eight months before the hearing. On the other hand, the petitioner's mental illness historically had gone through periods of being symptomatic, followed by periods of being in remission. On that record, this court concluded, the PSRB reasonably could find that the petitioner's underlying mental condition "persists," even though the only expert who testified to the petitioner's mental condition as of the time of the hearing stated that the petitioner no longer had a mental disease. *Id.* That was so because the evidence of the petitioner's history was not "so remote that a reasonable person could not, as a matter of law, give that evidence substantial weight." *Id.* at 128. Consequently, the PSRB's order was supported by substantial evidence.

*Einstein* is instructive here. The question, given our standard of review, is whether, *as a matter of law*, a reasonable person could not give petitioners' criminal histories substantial weight, because of the age of the past charges and convictions, or because several of the charges went unadjudicated. We cannot so conclude in either of these cases.

■■ Criminal history, even of arrests and unadjudicated charges, certainly is relevant in attempting to assess the nature and kind of risks that particular offenders pose for the future. That is true as a matter of logic and human experience, and it is reflected in the fact that the legislature has specifically authorized the board to consider an offender's presentence report and "any other information relevant" to the offender's safe reintegration into the community. ORS 144.098(1)(d). In Roberts's case, the board relied on the information contained in his presentence report—*i.e.*, Roberts's history of past sexual offense charges and arrests, and his prior conviction for a sexual offense involving a minor victim. That history is not something we presume to be characteristic of all or even most offenders whose current crimes of conviction involve, as in Roberts's case, only assault and weapons convictions. Based on that history, a reasonable person could find that Roberts is at risk of committing sexual offenses in the future. The fact that a reasonable person could also draw a contrary inference, or that reasonable persons

might differ in their assessment of the strength of the inference or the degree of the risk, does not mean that the board's implicit finding in that regard is not supported by substantial evidence. The board therefore was entitled to impose the challenged sex offender special conditions as necessary to further the public's safety and Roberts's reintegration into the community.

■ The facts in Weems's case present a different and arguably closer issue, because Weems has no previous *conviction* of a sexual offense. His criminal history includes past sexual offense charges that eventually were dismissed for reasons that the record does not disclose. The set of charges for sexual abuse in the first and second degrees resulted in a conviction, but the conviction was for the lesser-included offense of menacing. The absence of a known prior *conviction* for a sexual offense in Weems's case weakens—at least, to some degree—the possible inference that he is at risk of committing a sexual offense in the future.

It does not, however, weaken that inference so much that, as a matter of law, a reasonable person would be unable to draw it. In that regard, it is important to describe what the board had before it. Weems's past charges and conviction for menacing were documented through a formal sexual offender risk assessment that DOC performed in 2004, a few months before Weems's release. That assessment was made using a standardized predictive test scale (the "STATIC-99") that the DOC has approved to assess whether someone, upon release from incarceration, should be designated a predatory sex offender.[11] For the board to make that designation, an offender's criminal history must include at least one qualifying past sexual offense conviction.[12] In addition, at the time of

---

[11] ORS 181.585(2) requires the board and other agencies charged with determining whether a person is a predatory sex offender to use a sex offender risk assessment scale approved by the DOC. As of 2004, when Weems's release plan was prepared, the DOC had approved, and the board by rule had endorsed the use of, the STATIC-99 test, which was a scoring sheet accompanied by a lengthy set of "definitions" that served to provide guidance on how the assessment is to be performed. *See* OAR 255-060-0011 (2005) (effective June 14, 2004); Exh Q-1 (STATIC-99 scoring worksheet); and Exh Q-2 (definitions for STATIC-99).

[12] To be designated a "predatory sexual offender" by the board, an offender must have been convicted of any degree of rape, sodomy, sexual abuse, or unlawful penetration. OAR 255-060-0011(1) (2005) (effective June 14, 2004).

Weems's evaluation, the offender had to score a certain level on the STATIC-99, which takes into account such factors as the offender's age, prior sexual offenses, prior nonsexual offenses, the characteristics of the victims of those prior offenses, and whether violence was involved in the offenses. OAR 255-060-0011 (2005), Exh Q-3 (effective June 14, 2004). At the time of Weems's assessment, the board would designate an offender with a qualifying past conviction to be a predatory sex offender if that offender received a score of four or more points on the assessment.[13]

Weems's sex offender risk assessment did not result in his designation as a predatory sex offender, because he had no known qualifying past sexual offense conviction. But for that fact, however, Weems would have qualified for that designation. Weems received a STATIC-99 score of 4, which put him into a "medium-high" risk category.[14] That score was based on the facts that Weems had two prior charges for sexual offenses, four or more prior sentencing dates (excluding the sentencing date for the crimes of conviction), an unrelated victim, and a male victim.[15] The STATIC-99 predictive test considers prior charges and arrests for sexual offenses to be significant in assessing the risk that someone will commit a future offense; it is not limited to convictions.[16] Thus, the

---

[13] OAR 255-060-0011(3) (2005) (effective June 14, 2004) specified the scoring levels that would result in a predatory sex offender designation as of 2004. Since Weems's evaluation and release, the board has modified its rules and now requires a higher score of six or greater on starred items. OAR 255-060-0011(3). The board also has authority to look beyond the score on the sexual offender risk assessment and to consider "any other evidence that the inmate or the offender exhibits characteristics showing a tendency to victimize or injure others." OAR 255-060-0011(1).

[14] The worksheet that reveals Weems's score does not explain what risk category the various scores fall into. That information is provided in Exhibit Q-1, the standard STATIC-99 scoring worksheet that the board has adopted by rule. On the bottom of that exhibit is a grid for translating the scores into risk categories. A score of 0-1 is "low," 2-3 is "medium-low," 4-5 is "medium-high," and 6 is "high." *See* OAR 255-060-0011, Exh Q-1 (2005) (effective June 14, 2004) (STATIC-99 scoring worksheet).

[15] The unrelated male victim that contributed to Weems's STATIC-99 score was the 9- or 10-year-old son of a friend—*i.e.*, the victim involved in Weems's 1991 sodomy charges. Weems admitted that information himself during his sex offender assessment.

[16] *See* OAR 255-060-0011, Exh Q-2 at 13 (2005) (effective June 14, 2004) ("To be considered a sexual offence [*sic*] the sexual misbehaviour [*sic*] must result in some form of criminal justice intervention or official sanction."); *id.* (sexual offenses may be scored only from official records, not self-reporting of an offender); *id.* at 16

past sexual offense charges and the conviction for menacing that the board relied on, which were before the board as part of Weems's sex offender assessment, had resulted in a significant risk score. Given the record before the board, a reasonable person—and, therefore, the board—could conclude that sex offender special conditions were appropriate in Weems's case to promote public safety and assist in his reformation.

■ Petitioners point to one further aspect of the board's orders to argue that, on the records before it, the board erred in imposing the special conditions. Relying on the "per parole officer" notation that followed each condition, each petitioner argues:

> "[I]f sex offender conditions were reasonably related to the statute's twin goals [of public safety and offender reformation], then the record would readily so reflect and the board would not hesitate to impose that condition. Instead, the board could not determine from this record whether the sexual offender treatment was necessary for petitioner's reformation, or whether prohibiting petitioner from having contact with minors and excluding him from places where they gather was necessary for the protection of the public; consequently, the board delegated that decision to petitioner's supervising officer."

Petitioners' argument relies on a false—or, at least, overstated—premise. The board did not decline or, for that matter, "hesitate," to impose the sex offender special conditions and opt instead to delegate the decision to petitioner's supervising officer. Rather, after reciting petitioner's history in each case, the board expressly, and unequivocally, stated: "It was these individual circumstances that led the board to determine that it was necessary to *impose* the contested special conditions in [petitioner's] case." (Emphasis added.) In Weems's case, the board further explained that it "took into consideration the age of the offenses when it imposed the special conditions to be *implemented* at the discretion of your supervising officer." (Emphasis added.)

_____

("Simple questioning by police not leading to an arrest or charge is insufficient to count as a sexual offence [*sic*].");  *id.* at 28 (arrests and charges on nonsexual offenses are not scored).

Expressly, then, the board *imposed* the special conditions. The board, however, left it to the supervising officers in the field to determine, as a matter of discretion, whether to *implement* the special conditions. The board did not expand, in either order, on the responsibility of the supervising officers to determine, once petitioners were being actively supervised, whether to implement the conditions or how the board would expect that to be done (*e.g.*, by an evaluative process involving treatment or a polygraph examination, which itself would entail actual implementation of the conditions). The board might have provided a further explanation, had either petitioner in these cases raised a concern to the board about that aspect of the board's order. But neither petitioner did. In both cases, petitioners challenged the special conditions only on the ground that the board lacked authority to impose them in the case of an offender who was not on supervision for a sexual offense and who claimed, as Weems did, never to have committed a sexual offense.[17]

Given the particular posture of these cases, and the lack of a preserved objection to that aspect of the board's order, we decline to further consider petitioners' arguments in those regards. The board has not had the opportunity to explain the scope of a supervising officer's authority to *not implement* a condition of this kind, once it has been imposed by the board. *See* ORS 144.104(2) (supervising officer has authority to adjust level of supervision for a person on post-prison release). Moreover, the issue that petitioners raise in this regard may be purely academic in these cases. We have determined that substantial evidence supported *imposition* of the special conditions in petitioners' cases. That is enough to resolve these cases. Beyond that, any issue about the board's authority to delegate to the supervising officers the authority *to adjust* the conditions would appear to be moot,

---

[17] Petitioner Weems argues that he did challenge the authority of his supervising officer to impose the special conditions. We have reviewed his submission to the board, and we disagree. He claimed in it that his supervising officer had imposed new conditions on him that the board had not authorized, and in particular had prevented him from living or being intimate with his adult girlfriend. We find nothing in his challenge that would have fairly alerted the board to the fact that he was objecting to the supervising officer's ability to *not implement* the sex offender special conditions if that officer determined them not to be necessary.

because petitioners are no longer on post-prison supervision.[18] For those reasons, we do not consider petitioners' arguments about the "per parole officer" notation in the boards' orders.[19]

The decisions of the Court of Appeals are affirmed.

---

[18] As we noted in footnote 7, the sex offender special conditions requiring petitioners to submit to polygraphs and to participate in sex offender treatment are not moot, because the state is seeking reimbursement from petitioners for the costs of those conditions. The fact that the state seeks such reimbursement—which petitioners assert and the state does not dispute—suggests that the special conditions were imposed in petitioners' cases and that the supervising officers did not exercise whatever authority the board delegated to them to not implement them.

[19] Petitioners also make an additional, and somewhat different, argument that the board's orders exceeded the board's lawful authority by giving too much "decision-making power" to the supervising officers. For the same reasons, we decline to consider that argument. Also, petitioners advance an extensive argument that the board's imposition of the challenged special conditions in these cases violated federal due process principles. That argument is raised and developed for the first time to this court. We therefore do not consider it, either.