Argued and submitted March 3, decision of the Court of Appeals reversed, order of the Board of Parole and Post-Prison Supervision affirmed May 29, 1998

# HARRY JAMES MARTIN,
*Respondent on Review,*

*v.*

# BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Petitioner on Review.*

## (CA A89428; SC S44242)

957 P2d 1210

Christine Chute, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

George W. Kelly, Eugene, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, and Durham, Justices.**

GILLETTE, J.

** Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski and Leeson, JJ., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This is a case involving judicial review of an order of the Board of Parole and Post-Prison Supervision (the Board). Respondent is a person who is subject to the jurisdiction of the Board by virtue of having been convicted of and sentenced to a term of imprisonment for the crimes of sodomy in the first degree and sexual abuse in the first degree. He challenges a decision of the Board that imposed on him a special condition of post-prison supervision that denies him the right to enter most of Lane County.

Respondent sought judicial review of the special condition of post-prison supervision in the Court of Appeals. That court reversed the decision of the Board and remanded the matter for reconsideration on the ground that the Board had not stated in its decision "a rational explanation of its decision that the special condition[ ] that it impose[d was] necessary to effectuate the objectives of the [law authorizing post-prison supervision]." *Martin v. Board of Parole*, 147 Or App 37, 45, 934 P2d 626 (1997). We allowed the Board's petition for review, and now reverse the decision of the Court of Appeals.

In order to understand this case fully, it is necessary to understand the crimes for which respondent was convicted. We turn to that subject first.

Respondent was convicted on pleas of no contest to one count each of sodomy in the first degree and sexual abuse in the first degree. The victim was a child whom respondent in effect had purchased from the victim's mother in return for a parcel of real estate in central Oregon. The victim was four years old at the time. Respondent falsified the victim's birth certificate by having his name placed on it as the victim's father.

Respondent took the victim home to live alone with him. During the remainder of her childhood, respondent abused the victim sexually, physically, and psychologically. Respondent beat the victim thousands of times; he forced her to perform sexual acts with him and with another woman; he isolated the victim by not letting her attend school and by

telling her that he and she "shared the same brain and he knew what she was thinking and doing."

Law enforcement authorities finally learned of the victim's situation and removed her from respondent's home. Respondent was indicted on three counts of sodomy in the first degree, three counts of sexual abuse in the first degree, and one count of furnishing obscene materials to a minor. As noted, he pleaded guilty to two of the charged offenses; the others were dismissed.

When interviewed before sentencing, respondent told the interviewer that he actually was innocent, but had pleaded guilty to spare the victim the trauma of a trial. He repeatedly stated that he hoped to be reunited with the victim who, he insisted, had been "brainwashed" by the authorities.

Respondent had a previous conviction involving the sexual abuse of a nine-year-old girl. He minimized the significance of that conviction by stating that the victim in the earlier case was "a very mature nine-year-old." An evaluator labeled respondent a pedophile with features of borderline, antisocial, and narcissistic personality disorders. Respondent was described by the evaluator as being in "massive denial."

The victim lives in Lane County. With counseling, she has managed to pick up some of the threads of a normal life, although not without going through a long embarrassing period in which her complete inexperience in society made her, as she described herself, "the laugh of the school[,] * * * the school geek."

We turn next to the procedural history that led to the present case. The trial court, in sentencing respondent, ordered that "[t]he length of post-prison supervision shall be 36 months." Respondent was scheduled for release on supervision in April 1995. The Board set special supervision conditions for his release, including conditions that he "NOT * * * ENTER LANE CO[UNTY]" and that he have "NO DIRECT OR INDIRECT CONTACT W[ITH] VICTIM OR VICTIM[']S FOSTER FAMILY." *See* ORS 144.101(1) (authorizing the Board to impose conditions of post-prison

supervision); ORS 144.102(1), (2), and (3) (requiring conditions of post-prison supervision to be in writing, prescribing certain conditions, and authorizing the Board to set other, special conditions that the Board "determine[s] are necessary because of the individual circumstances of the person under post-prison supervision").

Through counsel, respondent sought administrative review of the special post-prison supervision condition that forbade him to enter Lane County. He argued that that condition should be enough because it imposes inordinate hardships on himself and because the separate condition that he have no contact with the victim or with her foster family adequately protected the victim (respondent specifically noted that he did not object to that latter condition). In the alternative, respondent argued that the Board at least should ease the restriction on his ability to enter Lane County in certain places and for certain purposes. In so arguing, respondent placed significant emphasis on the fact that, by forbidding him to enter the county at all, the Board effectively had denied him the ability to drive from the northern to the southern part of the state at any place west of the crest of the Cascade Range.

On reconsideration, the Board agreed to modify its special condition relating to respondent's ability to enter Lane County. It stated:

"THE BOARD HEREBY MODIFIES SPECIAL CONDITION 10 TO ALLOW YOU TO TRAVEL IN WESTERN LANE COUNTY ALONG STATE [*sic*] ROUTE 101 AND THE ADJOINING COASTAL CITIES. YOU ARE PROHIBITED FROM ENTERING LANE COUNTY BEYOND 5 MILES EAST OF STATE ROUTE 101. THE BOARD HAS CONSIDERED YOUR REQUEST FOR CONDITIONAL ENTRY INTO LANE COUNTY AND THE INFORMATION SUPPORTING THAT REQUEST. HOWEVER, THE BOARD REMAINS CONVINCED THAT THE STATE'S INTEREST IN PROTECTING THE VICTIM OF YOUR SODOMY AND SEX ABUSE CONVICTIONS OUTWEIGHS YOUR INTEREST IN CARRYING ON YOUR PERSONAL AFFAIRS IN THE PROHIBITED AREAS.

"SPECIAL CONDITION 10, AS MODIFIED, IS REASONABLY RELATED TO THE GOALS OF POST-PRISON

SUPERVISION, ONE OF WHICH IS TO PROTECT THE VICTIM FROM FURTHER INJURY."

Still dissatisfied, respondent sought judicial review of the Board's order in the Court of Appeals.

In the Court of Appeals, respondent acknowledged that the Board had the discretionary authority to impose special conditions of post-prison supervision that reasonably are related to the Board's legitimate goals. However, he asserted, conditions that are broader than necessary to achieve the Board's legitimate statutory goals "must be vacated." He summarized his own argument concerning the special condition in this way: "The public—and the victim in particular—are more than adequately protected without barring petitioner from entering Lane County. The condition should be removed."

In making the foregoing argument, respondent cited no statutory or rule authority. Instead, he relied entirely on two Court of Appeals cases, *Dingman v. Board of Parole*, 114 Or App 516, 835 P2d 958 (1992) and *Owens v. Board of Parole*, 113 Or App 507, 834 P2d 547 (1992). In each of those cases, the Court of Appeals had struck down special conditions of parole that forbade parolees from entering or residing in certain counties. The court reasoned in each case that the challenged condition was broader than necessary to accomplish the Board's legitimate aims of protecting victims and the public. *Dingman*, 114 Or App at 517; *Owens*, 113 Or App at 511-12. The Board in the present case urged the Court of Appeals to overrule both of its precedents, arguing that those two decisions did not utilize the correct standard of review of the Board's decisions.

The Court of Appeals chose to address the case in a slightly different way than it was presented by respondent. Although acknowledging certain technical errors in both *Dingman* and *Owens*, the court concluded that those cases nonetheless "were correctly reasoned and * * * require that we reverse and remand this case." *Martin*, 147 Or App at 40.

The Court of Appeals began its analysis by noting that its authority to conduct judicial review of the Board's orders derived from ORS 144.335(1). *Ibid.* The scope of that

review, it noted, was provided in ORS 144.335(5) and was limited to " 'affirm[ing], revers[ing] or remand[ing] the order on the same basis as provided in ORS 183.482(8).' " *Martin*, 147 Or App at 40 (quoting statute). Translating that scope of review into the terms of ORS 183.482(8), the court then concluded that its review in the present case was to determine whether the Board's order was " '[o]utside the range of discretion delegated to the agency by law.' " *Id.* at 41 (quoting ORS 183.482(8), the judicial review provision of the Oregon Administrative Procedures Act (APA)).

The foregoing line of inquiry brought the court to the statutory source of the Board's authority, ORS 144.102(3) (since amended by Oregon Laws 1997, chapter 525). That statute provides:

> "The board may establish such special conditions as it shall determine are necessary because of the individual circumstances of the person under post-prison supervision."

That grant of authority was a broad one, the court acknowledged, but it was not a "blank check":

> "The language of the statutory grant of discretion refers to 'necessity,' which has meaning only in a context of statutory objectives. Moreover, it expressly provides for judicial review, and that implies that there must be something meaningful for the courts to review."

*Martin*, 147 Or App at 41-42.

After examining the legislative scheme governing the Board's duties and authority, the Court of Appeals then concluded:

> "Given the context within which the Board's determination is required to take place, it seems clear that the 'necessity' of special conditions must be determined in reference to the statutory objectives that are repeated throughout the sentencing and post-prison supervision statutes, namely, the protection of public safety and the reformation of the offender."

*Id.* at 43. However, the court then went on to hold that, in addition to the substantive limitations imposed on the Board's exercise of its discretion,

"there are limitations on its decision making that are imposed as a function of the statutory provision for judicial review. Of particular importance to this case is *the requirement that the agency make findings of fact and provide an explanation as to why its findings lead to the conclusions that it reaches.*"

*Ibid.* (emphasis supplied; citing and relying on *Home Plate, Inc. v. OLCC*, 20 Or App 188, 190, 530 P2d 862 (1975)).

The problem with the Board's order in this case, the Court of Appeals finally concluded, was precisely the same as the problems found in *Dingman* and *Owens, viz.*:

"The Board has not explained why excluding petitioner from the bulk of Lane County is 'necessary' to either of the statutory objectives of protecting the public or reforming the offender. Indeed, it is questionable that the Board made any finding of necessity at all. * * * We * * * hold * * * that, to establish that it exercised its discretion within the range delegated to it by law and to provide a basis for meaningful judicial review, *the Board must offer a rational explanation of its decision that the special conditions it imposes are necessary to effectuate the objectives of the statute.* The Board · did not do so in this case."

*Id.* at 45 (emphasis supplied). The court therefore reversed the Board's order and remanded the case to the Board for further consideration. *Ibid.*[1]

The Board seeks review of the Court of Appeals' decision. It argues that the court both misperceived the scope of its authority on judicial review and imposed a requirement of findings and an explanation that the Board's judicial review statutes do not support. We allowed review to address those issues.

As noted, orders of the Board are subject to judicial review in the Court of Appeals. ORS 144.335(1).[2] Following

---

[1] Judge Leeson, in a concurring opinion, stated:

"The facts in this case are egregious. The Board did not necessarily err in imposing the condition; it simply failed to provide a rational explanation of the nexus between the condition that plaintiff not enter Lane County and the purposes of the statute."

*Martin,* 147 Or App at 45.

[2] ORS 144.335(1) provides:

such review, the "court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8)." ORS 144.335(5). The Board asserts that the Court of Appeals misapplied the standard in ORS 183.482(8) in the present case.

■ The Board acknowledges that an appellate court's authority is clear when it is conducting judicial review in a case in which the agency under review is required by law to make findings of fact and conclusions under ORS 183.470.[3] In such cases, the agency's order must contain findings of fact that are supported by substantial evidence in the record, conclusions of law, and a statement of the reasons why the conclusions are justified by the findings. *See, e.g., Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982) (agency must articulate connection between facts found and legal conclusions drawn from those facts). That rule is not applicable here, however, the Board asserts, because the Board *is not subject to the findings of fact and conclusions of law requirement of ORS 183.470.*

The Board is correct that it is exempt from the APA requirement that it make specific findings of fact and conclusions of law. ORS 183.315(1) provides:

"Except as otherwise provided [in a section unrelated to the Board], the provisions of ORS * * * 183.470 * * * do not apply to * * * [the] State Board of Parole and Post-Prison Supervision."

Because it is not required by law to make findings of fact or conclusions of law, the Board reasons, it cannot be faulted legally for not doing so.

---

"When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to * * * the imposition of conditions of * * * post-prison supervision * * *, *such person is entitled to judicial review of the final order.*"

[3] ORS 183.470(2), a section of the APA, provides:

"In a contested case:

"* * * * *

"(2) A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."

The Board relies on *Price v. Board of Parole*, 301 Or 393, 397, 723 P2d 314 (1986), where the court said that an appellate court's "authority to reverse or remand orders of the Board is only as comprehensive as provided in ORS 183.482(8)." That case states a truism about the scope of judicial review. That statement does not advance the Board's argument, however. The real issue, it appears to us, is whether the court's authority under ORS 183.482(8) extends to requiring that agencies like the Board provide explanations in their opinions that connect their choice of action with the facts of the case.

■ The question of the extent of an appellate court's authority under ORS 183.482(8) is one of legislative intent. See *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993) (establishing statutory construction template). Under the first step of the analysis set out in *PGE*, the court examines the text and context of a statute to determine legislative intent. *Id.* at 610-11. In this case, an examination of text and context alone yields no definitive answer—the appellate court is neither explicitly granted, nor is it denied, the authority in question. Rather, it is granted authority in more general terms, *e.g.*, to "remand the order to the agency if it finds the agency's exercise of discretion to be * * * [o]utside the range of discretion delegated to the agency by law." ORS 183.482(8)(b)(A).

The issue is resolved, however, when this court looks to another source in aid of construing the statute at the first level of analysis, *viz.*, case law. See *Gaston v. Parsons*, 318 Or 247, 252, 864 P2d 1319 (1994) (case law construing the statute in question is part of context and is pertinent at the first level of inquiry into legislative intent).

The case that we find to be most pertinent in this respect is *Drew v. PSRB*, 322 Or 491, 909 P2d 1211 (1996). In *Drew*, the Psychiatric Security Review Board (PSRB) concluded that the petitioner suffered from a mental disease or defect and was a danger to others. Petitioners challenged both those conclusions on the ground that neither was supported by substantial evidence in the whole record. ORS 183.482(8)(c). Like the Board in this case, the PSRB was exempted by ORS 183.315(1) from the requirement that it

make the kinds of findings of fact and conclusions of law that are required by ORS 183.470(2). This court nonetheless ruled that the PSRB must include in its order some explanation that connected the evidence that was in the record with the legal conclusions that it had drawn. *Drew*, 322 Or at 499-500. The court explained:

> "Since 1975, a long and consistent line of decisions from the Court of Appeals has held that, in addition to the statutory requirement that findings be supported by substantial evidence, agencies also are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it found to the *conclusions* that it draws from those facts. This court has followed the lead of the Court of Appeals and adopted the same rule."

(Emphasis in original; citations omitted.) The court then reversed the decision of the PSRB and remanded the case to that agency for further consideration because of "the agency's failure to connect permissibly its facts and its holding." *Id.* at 500-01.

*Drew* involved judicial review under ORS 183.482-(8)(*c*), rather than under either subsection (*a*) or (*b*). The Board does not argue for any difference based on that distinction alone, however, and none occurs to us.[4] *Drew* and the present case are too much alike to permit any meaningful distinction between them.

Our review of the pertinent case law satisfies us that the requirement of some kind of an explanation connecting the facts of the case (which would include the facts found, if any) and the result reached by an agency is a requirement of ORS 183.482(8), as that section has been construed authoritatively by this court. Our *PGE* analysis thus ends at the first level of analysis.

---

[4] Indeed, as the Board acknowledges in its brief on the merits, this court has imposed the same requirement in analogous cases involving judicial review under subsection (a), *see Dunning v. Corrections Facility Siting Authority*, 325 Or 269, 275-76, 935 P2d 1209 (1997) (where findings not required, appellate court still will review such findings as agency chooses to make for substantial evidence), and subsection (b), *see Calderon-Pacheco v. Board of Parole*, 309 Or 454, 788 P2d 1001 (1990) (board action inconsistent with board's own rule).

The Board argues in the alternative that when, as here, an agency is exempt from the requirements of ORS 183.470, the agency should not be required to set out the rationale for its order in the order itself but, instead, should be allowed to advance its supporting rationale in its brief on appeal. "That appears to be what the court actually did in *Drew* * * *," the Board asserts, "although the language of *Drew* is to the contrary."

The Board misunderstands what happened in *Drew*. The challenge there was to the sufficiency of the evidence. The court on its own was able to determine that there was evidence in the record that would permit, although it did not require, the action that the PSRB had chosen to take. *Drew*, 322 Or at 499. The problem, however, lies in the fact that the PSRB never had referred to that particular evidence, even obliquely, and the additional fact that certain of the evidence favoring the result reached by the agency would not have constituted substantial evidence. The court could not be sure which evidence had played the decisive role in the PSRB's decision. Without that knowledge, which a written explanation could have provided, the court could not affirm the agency's decision.

Although the Court of Appeals in its opinion did, at one point, suggest (inadvertently, we think) that the Board was required to make findings of fact, *Martin*, 147 Or App at 43, the court elsewhere correctly identified a permissible basis for its holding, *viz.*, the lack of a rationale connecting the facts of the case with the legal conclusions that the Board had drawn. *Id.* at 45. Thus, the court correctly understood the legal standard of review to be applied in the case. The Board's contrary argument is not well taken.

The question remains whether, having identified the appropriate standard of judicial review to be used in this case, the Court of Appeals also correctly applied it. We turn to that question.

Although respondent has labeled some of them as "hearsay" and "hearsay on hearsay," he never has challenged the permissibility of considering all the facts that we have recited relating to this case. Instead, respondent has confined his argument to an assertion that the Board has failed to

demonstrate in its opinion why the special condition to which he objects is necessary to accomplish the purposes of post-prison supervision.

■    As noted, ORS 144.102(3) authorizes the Board to establish "such special conditions as it shall determine are necessary" because of the individual circumstances of the offender. We agree with the Court of Appeals that the statute's grant of discretion "has meaning only in the context of the statutory objectives" that the Board is to pursue. *Martin,* 147 Or App at 41. We further agree with that court that, considering the statutory text in light of its context and the legislative scheme as a whole, "the 'necessity' of special conditions must be determined in reference to the statutory objectives that are repeated throughout the * * * statutes, namely, the protection of public safety and the reformation of the offender." *Id.* at 43.

We do not understand respondent to argue otherwise. Instead, he asserts:

> "Nothing in [the Board's] statement[s] indicates anything about findings (indeed, no one knows what the Board believes respondent did to the victim, or what the victim would experience from an accidental meeting with the respondent); nothing is said about the state's or the victim's interests; there is no indication of the harm to the state or the victim of modifying special condition 10; and there is no attempt to weigh the supposed risk to the victim against the loss the condition imposes on the respondent. In sum, there is nothing upon which this Court can properly base its judicial review."

■    None of those propositions is well taken. The facts that the Board necessarily found are reflected in the recitations included within the evaluative portion of the Board's order. Moreover, we believe that, respondent's hyperbole to one side, no one reasonably could doubt that any encounter between respondent and his victim would be a psychological disaster for the victim. All the information available to the Board indicated that. The Board could not eliminate the possibility of an encounter entirely; the vagaries of human experience are not so easily controlled. But the Board was not required to set conditions so narrowly that they would permit

a substantial danger that the two would meet. The Board's order specifically indicates that it weighed the different interests of the parties. Once it did so, we hold that its choice in this case lies well within the permissible range of choices that it could make.[5]

It follows from the foregoing that, although we agree with much of the substantive legal analysis found in the opinion of the Court of Appeals, we disagree with its conclusion. We hold that the special condition of post-prison supervision imposed on respondent in this case was one within the range of choices entrusted to the agency by law, and that the agency's explanation of why it made that choice was sufficient to withstand a challenge on judicial review. The contrary decision of the Court of Appeals must be reversed.

The decision of the Court of Appeals is reversed. The order of the Board of Parole and Post-Prison Supervision is affirmed.

---

[5] Our holding is a limited one. We do not, for example, express an opinion whether either of the two cases on which the Court of Appeals relied was wrongly decided on its own facts. We note only that a "need to protect the victim" rationale is not a panacea; exclusion orders having a scope like that in the present case need greater justification than the fact that a victim exists. But the facts of the present case (as the Board was entitled to find them) all justified the stringent condition that the Board set.