Argued and submitted May 4, reversed and remanded September 2, 2020

BEN ROBERT SCHMULT,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A168320

474 P3d 920

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision, in which the board set the supervision conditions for petitioner's post-prison supervision. Petitioner challenges a single special condition, which essentially bars him from using any computer for any reason without prior approval, asserting that the condition exceeds the board's statutory authority. Under ORS 144.102(4)(a), the board has authority to impose a special condition of post-prison supervision that it "considers necessary because of the individual circumstances of the person on post-prison supervision." Petitioner argues that the computer condition is too broad to be "necessary," while the board argues that restricting petitioner's access to computers is necessary to promote public safety and to assist in petitioner's rehabilitation, given his individual circumstances. The board also contends that the condition should be understood to refer only to the types of devices that have the capability for petitioner to engage in the improper acts reflected in his history, not to all computers. *Held*: The board exceeded its authority under ORS 144.102(4)(a). Given the ubiquity of computers in modern life, an outright ban on access to all computers of every kind for every purpose without limitation, absent prior approval, is too restrictive to reflect a weighing of the interests of the parties. On remand, the board will have discretion to craft a more limited condition, which need not be so narrowly tailored as to address only certain or immediate risks to public safety or offender reformation, but which should be targeted to addressing substantial dangers in those regards.

Reversed and remanded.

Sarah De La Cruz, Deputy Public Defender, argued the cause for petitioner. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher Page, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

On judicial review of a final order of the Board of Parole and Post-Prison Supervision, petitioner challenges a special condition of post-prison supervision that essentially bars him from using any computer for any reason without prior approval. We agree with petitioner that, in this case, as written, that condition exceeds the board's authority. Accordingly, we reverse and remand.

Petitioner sexually abused his teenaged daughter in 2012. He was convicted of first-degree sexual abuse and sentenced to prison and post-prison supervision. Upon his release from prison, the board entered an order of supervision conditions for petitioner's post-prison supervision. Petitioner will be subject to those conditions for nearly four years, from April 2018 (when petitioner was released from prison) until January 2022 (when his post-prison supervision ends).

The board's order contains numerous special conditions. One is the challenged condition, which essentially bars petitioner from using any computer for any reason without prior approval:

> "No access to a computer, the Internet, digital storage devices or other computer-related devices and peripheral computer equipment without the prior written approval of the supervising officer and, where applicable, the sex-offender treatment provider, and only under conditions set by them."

Because it takes a computer to use the internet, a digital storage device, or peripheral computer equipment, we generally refer to this provision as a "computer" ban.

Another condition allows petitioner's supervising officer to conduct random or unannounced examinations of any computers or other electronic devices to which petitioner has access *and* to install on them software capable of determining whether sexually explicit materials have been accessed, exchanged, or stored. Additionally, petitioner is subject to over a dozen conditions identified as "sex offender package A," which, for example, prohibit petitioner from any contact with anyone under 18 years old without prior

approval and prohibit petitioner from owning or possessing pornography.

Of the many supervision conditions that apply to him, petitioner challenges only the computer ban. He contends that it exceeds the board's authority under ORS 144.102(4)(a) and that it is unconstitutionally vague and overbroad in violation of the state and federal constitutions. We address the statutory challenge first and, because it is dispositive, do not reach the constitutional issues. *See Stelts v. State of Oregon*, 299 Or 252, 257, 701 P2d 1047 (1985) (generally providing for consideration of state statutory arguments, state constitutional arguments, and federal constitutional arguments, in that order).

Under ORS 144.102(4)(a), the board has authority to impose a special condition of post-prison supervision that it "considers necessary because of the individual circumstances of the person on post-prison supervision." That grant of discretion to the board "has meaning only in the context of the statutory objectives that the [b]oard is to pursue." *Martin v. Board of Parole*, 327 Or 147, 159, 957 P2d 1210 (1998) (internal quotation marks omitted). That is, "the 'necessity' of special conditions must be determined in reference to the statutory objectives that are repeated throughout the statutes, namely, the protection of public safety and the reformation of the offender." *Id.* (internal quotation marks and ellipses omitted).

As recently clarified by the Supreme Court, ORS 144.102(4)(a) allows the board to "impose any condition that, in light of the supervised person's individual circumstances, the board reasonably could view as essential to or required for one or both of its broad objectives of 'promoting' public safety and 'assisting' in an offender's reformation." *Penn v. Board of Parole*, 365 Or 607, 635, 451 P3d 589 (2019) (quoting statute). In formulating special conditions, the board is not required to tailor them so narrowly as to address "only certain or immediate risks to public safety or offender reformation"; rather, the board has authority to "impose special conditions to address any *substantial danger* in those regards." *Weems/Roberts v. Board of Parole*, 347 Or 586, 598, 227 P3d 671 (2010) (emphasis added). Ultimately, the board

must weigh the different interests of the parties—*i.e.*, such as weighing the benefit of a particular condition to the public safety and the offender's reformation against the burden that it would impose on the offender—and impose conditions that fall within the range of legally permissible outcomes. *Penn*, 365 Or at 635; *Martin*, 327 Or at 159-60.

More restrictive supervision conditions generally require greater justification. For example, in *Martin*, the court upheld a "stringent condition" denying the petitioner the right to enter most of Lane County, where his victim lived, because there was evidence that it "would be a psychological disaster" for the victim to encounter him unexpectedly. *Id*. at 159-60 & n 5. In that case, the petitioner had "purchased" the victim when she was four years old and physically, sexually, and psychologically abused her for the rest of her childhood. *Id*. at 149. The court noted that the "fact that a victim exists" and a generalized "need to protect the victim" would not justify such a stringent condition. *Id*. at 160 n 5. However, the facts of the particular case did justify it. *Id*. at 159-60. The board "weighed the different interests of the parties," crafted a condition to avoid "a substantial danger that the two would meet," and arrived at a condition well within the permissible range of choices. *Id*.

In this case, petitioner argues that the condition barring him from using any computer for any reason without prior approval is too restrictive to be "necessary" and thus falls outside the board's authority. He points out that the condition applies not only to a personal computer but to an almost endless array of modern electronic devices that contain computers, such as cellular phones, smartphones, smartwatches, fitness trackers, credit card machines (like those used in grocery and retail stores), automated teller machines (ATMs), ticket kiosks for public transit, and so on. As for the internet, petitioner notes that the condition applies not only to using social media and viewing online pornography—aspects of the internet that he has misused in the past—but also to online job searches and applications, online banking, online health records, online library catalogs, online legal research, checking the weather, and so on. Petitioner argues that, even if *some* restraint on his computer and internet access is necessary to promote public

safety and assist in reforming him, the far-reaching condition imposed by the board is not reasonably related to those statutory objectives.[1]

In response, the board first argues that petitioner failed to exhaust his administrative remedies, because, in the board proceeding, he focused on constitutional issues and did not clearly delineate a statutory argument. Having reviewed the record, we reject that argument under the applicable standard. *See Tuckenberry v. Board of Parole*, 365 Or 640, 655, 451 P3d 227 (2019) (taking a prudential approach to issue exhaustion in board proceedings to impose special conditions of post-prison supervision). Turning to the merits, the board argues that, given petitioner's history, it is necessary to regulate his computer and internet use to ensure that he is not using a computer or electronic device to harm others. The board describes the challenged condition as a "logical way to ensure public safety" and further argues that petitioner having "unregulated access to electronic devices" would increase his recidivism risk. As for the scope of the condition, the board asserts that a person of ordinary intelligence would understand that it extends only to "devices that have the capability for petitioner to engage in the improper acts reflected in his history," *i.e.*, devices that can be used to store or display pornography, to spy on teenaged girls, or to communicate with teenaged girls.

We begin with whether it is within the board's discretion to impose *some* restrictions on petitioner's computer

---

[1] In his request for administrative review, filed a month after his release from prison, petitioner asserted that the computer ban was stopping him from accessing support networks (family, friends, religious, and legal), preventing him from working in a technical field, interfering with access to housing, education, and medical specialists, affecting his social security payments and benefits, limiting his access to administrative and health records, limiting his access to transportation, limiting his access to banking, limiting his ability to sell his art, and preventing him from watching television and listening to music. Petitioner noted that his entire adult life "has centered around electrical systems, mechanical systems, all of which are controlled by computers and digitally stored records, information, and controls." Petitioner also noted that he used computers and digital storage devices daily while incarcerated, including participating in classes and counseling by computer, and that he has over 3,000 pages of legal materials on a digital device that he needs to access. Petitioner stated that he did not object to some restrictions—such as having an "internet nanny," providing all of his passwords, and not being allowed to enter certain websites—but objected to the condition as written.

and internet use. We readily conclude that it is and reject any contrary argument by petitioner. Whether a special condition is "necessary" depends on "the individual circumstances of the person on post-prison supervision." ORS 144.102(4)(a). In determining whether a condition is necessary, the board "can and must consider advancing one or both of the dual goals of public safety and offender reformation in the light of the supervised person's specific circumstances, including the supervised person's current and prior convictions, history and background, record of conduct, and the risk of future harm that that conduct suggests." *Penn*, 365 Or at 635.

Here, the board found (and there is evidence to support) that petitioner showed pornography to his teenaged daughter to try to normalize his sexual abuse of her, that petitioner's former partner found child pornography on petitioner's computer in the past, and that petitioner has used Facebook to spy on at least one teenaged girl. Given those findings, the board did not abuse its discretion in determining that it is essential to promoting public safety and assisting in petitioner's reformation that some restrictions be placed on petitioner's computer and internet use while he is on post-prison supervision. And, indeed, regardless of the outcome of this judicial review proceeding, petitioner's computer and internet use will be restricted. Apart from the challenged condition, petitioner is already subject to other conditions that he does not contest, including that any computers or electronic devices to which he has access are subject to random or unannounced examinations as well as to the installation of software capable of determining whether sexually explicit materials have been accessed, exchanged, or stored. Petitioner is also prohibited from contacting anyone under 18 years old without prior approval, including on a computer, and from possessing pornography, including on a computer. The only question is whether the additional condition barring petitioner from accessing *any* computer for any purpose without prior approval goes too far.

On that issue, we agree with petitioner. A computer is "a calculator [especially] designed for the solution of complex mathematical problems; [specifically] **:** a programmable electronic device that can store, retrieve, and process data."

*Webster's Third New Int'l Dictionary* 468 (unabridged ed 2002); *see also id*. at 618 (defining "device" to mean "something that is formed or formulated by design"). The board's preferred definition of computer—from the statutory definitions applicable to computer crimes—is equally broad: "'Computer' means, but is not limited to, an electronic, magnetic, optical electrochemical or other high-speed data processing device that performs logical, arithmetic or memory functions by the manipulations of electronic, magnetic or optical signals or impulses, and includes the components of a computer and all input, output, processing, storage, software or communication facilities that are connected or related to such a device in a system or network." ORS 164.377(1)(b).

In the United States in 2020, computers are ubiquitous in nearly every aspect of daily life, as illustrated by the many examples cited in petitioner's request for administrative review. *See* 306 Or App at 355 n 1.[2] Given that ubiquity, we agree with petitioner than an outright ban on access to *all computers* of every kind for every purpose without limitation, absent prior approval, is too restrictive to reflect a weighing of the interests of the parties and falls outside the range of permissible outcomes in this case. *See Penn*, 365 Or at 635; *Martin*, 327 Or at 159-60. That is even more so given the other supervision conditions that already prohibit petitioner from engaging in the more specific types of computer use that have been problematic in the past—contacting minors and viewing pornography—and that allow the board to monitor petitioner's computer and internet use to ensure that he is compliant with those restrictions.

As for the board's position that "computer" does not mean all computers, we reject that argument for similar

---

[2] *See also, e.g.*, *United States v. Miller*, 594 F3d 172, 185 (3d Cir 2010) (describing restrictions on computer and internet use for persons on supervised release as bearing "on tools that are essential in modern life for legitimate purposes of communication, commerce, and information-gathering"); *U.S. v. Russell*, 600 F3d 631, 637-38 (DC Cir 2010) (recognizing the significant role of computers in both white and blue collar work in modern times); *State v. Cornell*, 202 Vt 19, 41, 146 A3d 895, 910-11 (2016) (describing a probation condition restricting the defendant from having a home computer or accessing the internet as "a sweeping restriction" that "would render nearly all the activities of life incalculably difficult in the modern age").

reasons as the Supreme Court rejected the board's argument in *Penn*. In *Penn*, as a special condition of probation, the board ordered the petitioner not to enter into any "intimate relationships" or participate in any "intimate encounters" with any person without prior written permission from his supervising officer. 365 Or at 609. When the petitioner pointed out the breadth of that condition, the board declined to modify it. *Id*. at 637. On judicial review, the board argued that, in context, a person of ordinary intelligence would understand "intimate" to mean only "sexual" and that, assuming that limited meaning, the condition imposed a necessary restriction in light of petitioner's history. *Id*. at 636. The Supreme Court rejected the board's attempt to rewrite the condition on judicial review. *See id*. at 637. Relying on the ordinary meaning of "intimate," which is much broader than "sexual," the court described the "breadth" of the challenged condition as its "central feature *** as written." *Id*. Although a narrower condition restricting the petitioner's sexual relationships and sexual encounters might have been reasonable for the board to consider, the condition that the board actually imposed was much broader and, ultimately, exceeded the board's authority under ORS 144.102(4)(a). *Penn*, 365 Or at 637-38.

In this case, the board has not explained why it is necessary to prevent petitioner from using ATMs or other myriad types of electronic devices that qualify as computers—but which cannot be used to store or display pornography, communicate with teenaged girls, or spy on teenaged girls—nor has it argued that the broad condition, as we and petitioner read it, legitimately advances the board's statutory goals. *Cf. id*. Indeed, we can think of no reason that requiring a supervising officer's permission (and potentially a sex-offender treatment provider's additional permission) before petitioner uses *any* computer for any purpose would be essential to advancing the board's goals of promoting public safety and assisting in petitioner's reformation. *Cf. id*. In imposing the challenged condition on petitioner, the board therefore acted beyond its statutory authority with respect to imposing special conditions of post-prison supervision. *Cf. id*.

In so holding, we express no opinion as to what a permissible condition restricting petitioner's computer and internet use might look like. The permissible scope of a special condition restricting computer and internet use will vary depending on the supervisee's individual circumstances—*see* ORS 144.102(4)(a) (allowing for the imposition of special conditions deemed "necessary because of the individual circumstances of the person on post-prison supervision")—and, because the board has discretion, any number of conditions could come within its discretion in this case. *See Penn*, 365 Or at 635. After weighing the different interests of the parties, the board may impose any condition that, in light of petitioner's individual circumstances, "the board reasonably could view as essential to or required for one or both of its broad objectives of 'promoting' public safety and 'assisting' in an offender's reformation." *Id.* The condition need not be so narrowly tailored as to address "only certain or immediate risks to public safety or offender reformation," but it should be targeted to addressing a "substantial danger" in those regards. *Weems/Roberts*, 347 Or at 598.

Accordingly, we reverse the board's order and remand to the board for further proceedings.

Reversed and remanded.