No. 239 April 1, 2026 133

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JOSHUA SCOTT JILLIE,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A184316

Submitted December 4, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Joel Duran, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for petitioner.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Reversed and remanded.

**O'CONNOR, J.**

On review of a final order of the Board of Parole and Post-Prison Supervision, petitioner challenges a special condition of post-prison supervision (PPS) restricting his use of personal computers and cell phones. Petitioner argues that the board exceeded its authority under ORS 144.102(4)(a) in imposing the challenged special condition because the record does not support the conclusion that the prohibition is necessary to promote public safety or his rehabilitation. We agree that the board exceeded its authority under ORS 144.102(4)(a) because the special condition forbids petitioner from using a computer or cell phone unless a supervising officer, in their discretion, grants him permission. We reverse the board's order and remand to the board for further proceedings.

Petitioner was convicted of the forcible rape of two women and the sexual abuse of a third woman in 2015. He was sentenced to 100 months' imprisonment and 140 months of PPS for each conviction of first-degree rape and 365 days in jail for his conviction of third-degree sexual abuse.

Petitioner was released to PPS in February of 2024, and he will be subject to the conditions of supervision set by the board through September of 2035. The board imposed the general conditions of PPS set out in ORS 144.102(2) and two sets of special conditions, relying on its authority under ORS 144.102(4). That statute provides that "[t]he board or supervisory authority may establish special conditions that the board or supervisory authority considers necessary because of the individual circumstances of the person on post-prison supervision." ORS 144.102(4)(a). One set of special conditions is titled "Sex Offender Package A," and it contains conditions that are required by statute upon conviction of certain crimes. ORS 144.102(4)(b); *see also Crombie v. Board of Parole*, 325 Or App 312, 314-15, 528 P3d 1171 (2023) (so noting). Those conditions include limits on petitioner's contact with minors, a requirement that he participate in a sex-offender treatment program and abide by the rules and conditions of the program, and a prohibition on viewing, listening to, owning, or possessing sexually stimulating materials.

The second set of special conditions is called the "Enhanced Computer Condition" and provides, in relevant part:

> "The supervised person is prohibited from accessing personal computers and cell phones except as authorized in this condition. The supervised person may access or use one approved personal computer (for example, desktop computer, laptop computer, tablet computer). The supervised person also may access or use a single approved cell phone. *** The supervised person must obtain approval, from the supervising officer, for any personal computer or cell phone prior to access or use. *** At their discretion, the supervising officer may approve additional personal computers or cell phones."

The Enhanced Computer Condition (which we also refer to as the "computer condition" for ease of reference) also requires petitioner to use approved devices in a manner that is consistent with his rehabilitation and public safety, abide by any restrictions set by sex offender treatment providers and his supervising officer, and to allow for his computer and cell phone use to be monitored by his supervising officer, through the use of monitoring software and unannounced examinations. It permits petitioner to use electronic devices approved by an employer within the scope of his employment.

Petitioner requested administrative review of the computer condition. In its response, the board explained that it imposed the condition because petitioner's underlying convictions involved the use of an electronic device. Those facts are recounted in police reports that were part of the record before the board.

The police reports describe an incident in which petitioner contacted B on Tinder, a dating application, they exchanged messages, and they agreed to go on a date. They met at a bar, drank together, went to B's house, and consensually kissed on the couch. Then, over B's objections, petitioner began taking off her shirt and touching her chest. He then grabbed B, pushed her down onto her stomach on the couch, pulled down her pants and underwear, and raped her.

The police reports before the board also describe another incident, where petitioner met S, an exchange

student, in the university cafeteria where he worked. They exchanged nonsexual text messages over the course of a few days, and petitioner invited S to his house. She agreed to come over if she could bring a friend, K. Petitioner googled "how to get girls to have a threesome." S and K came over, and the three of them watched a movie under a blanket on a sofa bed. Petitioner started touching both S and K on the stomach, breasts, and crotch, and they pushed his hands away. S got up and locked herself in the bathroom to get away. Petitioner entered the bathroom through a different door, covered S's mouth so that she could not speak, moved her into another room, pushed her down onto her stomach on a bed, pulled down her jeans and underwear, and raped her.

The board denied petitioner's request for administrative relief, stating that petitioner's use of a dating application in the offense against B was not "to cultivate a healthy, pro-social relationship" but "to locate and gain access to potential victims." The board also pointed out that petitioner used text messaging to invite S and K to his house and also used Google to look up "how to get girls to have a threesome." As a result, the board explained that the special condition restricting petitioner's use of computers and cell phones contained in the Enhanced Computer Condition was based on "substantial evidence" and that it was "appropriate, proportionate, and necessary for public safety[.]" This judicial review timely followed.

Defendant does not challenge the board's determination that the imposition of the condition was based on substantial evidence. We thus review the board's order to determine if the board's imposition of this condition is outside the range of discretion delegated to it by law. ORS 183.482(8); ORS 144.335(3).

The board may impose special conditions of PPS pursuant to the grant of authority in ORS 144.102(4)(a), which, as explained above, permits the board to impose special conditions that it "considers necessary because of the individual circumstances of the person on post-prison supervision." "Necessary," in this context, means that the board reasonably could view the special condition of PPS as

"essential to or required for one or both of its broad objectives of 'promoting' public safety and 'assisting' in an offender's reformation," contained in ORS 144.096(3). *Penn v. Board of Parole*, 365 Or 607, 635, 451 P3d 589 (2019); *Martin v. Board of Parole*, 327 Or 147, 159, 957 P2d 1210 (1998) ("[T]he 'necessity' of special conditions must be determined in reference to the statutory objectives that are repeated throughout the statutes, namely, the protection of public safety and the reformation of the offender." (Internal quotation marks omitted.)).[1] The board need not narrowly tailor a special condition so it addresses only "certain or immediate risks to public safety or offender reformation." *Weems/Roberts v. Board of Parole*, 347 Or 586, 598, 227 P3d 671 (2010). Instead, the board may impose special conditions that "address any substantial danger in those regards." *Id*.

That requires the board to weigh the public-safety or rehabilitative benefit of a special condition against the burden it imposes:

> "Ultimately, the board must weigh the different interests of the parties—*i.e.*, such as weighing the benefit of a particular condition to the public safety and the offender's reformation against the burden that it would impose on the offender—and impose conditions that fall within the range of legally permissible outcomes."

*Crombie*, 325 Or App at 321 (internal quotation marks omitted). That weighing must be individualized. It must focus on the particular offender, the risk that they pose to public

---

[1] ORS 144.096(3) governs release plans prepared by the Department of Corrections and specifies that a release plan "must include":

"(a) A description of support services and program opportunities available to the adult in custody ***;

"(b) The recommended conditions of post-prison supervision;

"(c) The level of supervision that shall be consistent with the risk assessment classification of the adult in custody;

"(d) *Any other conditions and requirements as may be necessary to promote public safety*;

"*****

"(f) *Any conditions necessary to assist the reformation of the adult in custody*."

(Emphases added.) Although the statute has been amended since the decision in *Penn*, those amendments do not affect our analysis, and we refer to the current version of the statute in this opinion.

safety, and their particular need for rehabilitation. *See* ORS 144.102(4)(a) (allowing for the imposition of special conditions deemed "necessary because of the individual circumstances of the person on post-prison supervision"); *Crombie*, 325 Or App at 320 (the necessity of PPS conditions "focus on the person, not the offense"). "More restrictive supervision conditions generally require greater justification." *Crombie*, 325 Or App at 321 (internal quotation marks omitted).

Here, the board imposed multiple restrictions on petitioner's computer and cell phone usage, and he does not contend that all of the limitations imposed exceed the board's authority. For example, petitioner may not access or possess any "sexually stimulating *** materials that are relevant to [his] deviant behavior." He may use computers and cell phones only "for a legitimate and lawful purpose" and "in a manner that is consistent with [his] rehabilitation or public safety." He must complete a sex offender treatment program and must adhere to the treatment provider's rules and restrictions on access or use of computers. Petitioner's supervising officer also has the authority to monitor his usage. The supervising officer can require petitioner to purchase and install monitoring software on his devices. The supervising officer can search his devices without warning, including by inspecting "any digital media, text messages, internet search history, and call logs."

Petitioner challenges only the limitations contained in the Enhanced Computer Condition that require a supervising officer's prior approval before accessing or using any computer or cell phone. He argues that the condition is too burdensome to reflect an individualized weighing of the relevant interests and thus is not "necessary" to promote public safety or support his reformation, as required by ORS 144.102(4)(a). We agree.

In two prior cases, we considered two previous iterations of a special condition of PPS that limits access to computers and the internet. In each case, we concluded that the board's orders in those cases had not reflected the type of weighing of the parties' interests that is required by ORS 144.102(4)(a) and the cases applying it. In both cases we emphasized that, in light of the ubiquity and necessity of

computers in modern daily life, a condition that drastically limits a petitioner's use of computers represents a significant burden.

In *Schmult v. Board of Parole*, 306 Or App 350, 352, 474 P3d 920 (2020), the petitioner was convicted of first-degree sexual abuse for abusing his teenaged daughter. The record before the board established that the petitioner showed his daughter pornography to try to normalize his sexual abuse of her, that he possessed child pornography on his computer, and that he used Facebook to spy on at least one teenaged girl. *Id.* at 356. The board imposed a special condition of PPS that "that essentially bar[red him] from using any computer for any reason without prior approval." *Id.* at 352. We concluded that the special condition was "too restrictive to reflect a weighing of the interests of the parties and [fell] outside the range of permissible outcomes in this case" in light of the ubiquity of computers; it thus violated the board's authority under ORS 144.102(4)(a). *Id.* at 357-58.

In *Crombie,* the petitioner was convicted of two counts of first-degree attempted sexual abuse and one count of second-degree attempted sodomy. 325 Or App at 314. The petitioner used his cell phone to text the minor victim, who was 13-to-14 years old, over the course of his months-long sexual relationship with her, and he sent text messages "regarding sex and pornography" to her 14-year-old sister. *Id.* On the petitioner's release from prison, the board imposed the same special condition of PPS that it had imposed in *Schmult. Id.* at 315. After *Schmult*, the board amended the special condition to provide, in relevant part,

> "No access to computing devices (including, but not limited to personal computers, Smartphones, tablets, Smart TVs, etc.), digital storage devices, other computer-related devices, peripheral computer equipment, websites, or applications that may be used in a way that is similar or related to the individual's past or current wrongful conduct, without the prior approval of the supervising officer and, where applicable, the sex-offender treatment provider, and only under conditions set by them."

*Id.* at 315. We noted that the parties appeared to agree that the condition "prohibit[ed] petitioner from having access to

any type of computer or computer-based electronic device that is *capable of being used to communicate with other people* without written preapproval." *Id.* at 322 (emphasis in original). We observed that, "[i]n the modern world, [a condition] prohibiting a person from using *any* electronic device to communicate with *any* other person—let alone prohibiting 'access' to any device with communications capability—is quite burdensome" and "cannot be imposed in a rote manner." *Id.* at 324 (emphases in original). In light of the petitioner's individual circumstances, which already included PPS restrictions limiting his contact with minors, we concluded that imposing the additional restriction on access to a common means of communication was an overly burdensome restriction that exceeded the board's authority in ORS 144.102(4)(a) because it did not adequately consider the need for that condition in light of petitioner's criminal conduct, individual circumstances, and potential benefit to public safety and petitioner's reform. *Id.* at 323-24.

We reached the conclusions in *Schmult* and *Crombie* based on the Supreme Court's interpretation of ORS 144.102(4)(a) in *Penn*. There, the court explained that the authority granted to the board to impose special conditions by ORS 144.102(4)(a) is limited to those conditions that the board "'*considers necessary* because of the individual circumstances of the person on post-prison supervision.'" *Penn*, 365 Or at 625 (quoting statute, emphasis in *Penn*). That necessity is grounded in the statutory purposes of post-prison supervision: the conditions must reasonably be "view[ed] as essential to or required for" the goals of either "'promoting' public safety" or "'assisting' in an offender's reformation," or both. *Id.* at 635. The standard "follows closely from the text of ORS 144.102(4)(a) and the objectives stated in ORS 144.096(3)(d) and (f)." *Id.*

In this case, as noted, petitioner challenges the Enhanced Computer Condition. The board acted within the authority granted in ORS 144.02(4)(a) in imposing the condition if it could "reasonably consider the imposition of [the limitations in the special condition] to be essential to its broad objectives of public safety and offender reformation as

they apply to petitioner's particular circumstances." *Penn*, 365 Or at 638.

Petitioner and the board agree that *Schmult* and *Crombie* direct our analysis. They disagree about whether the board could have reasonably understood the Enhanced Computer Condition to strike a reasonable balance, considering the burden on petitioner and the need for the condition. In this case, we conclude that it does not, for the same reasons we identified in *Schmult* and *Crombie*: the challenged special condition forbids access to an integral technology of modern life without adequately balancing that burden with an individualized consideration of its necessity for petitioner's rehabilitation or the protection of public safety.

The board argues that, unlike the conditions in *Schmult* and *Crombie,* the special condition affirmatively allows petitioner access to at least one personal computer and cell phone such that a supervising officer "does not have discretion" to deny access to those devices. It argues further that the prior-approval requirement is the only way to ensure that petitioner is abiding by the restriction on both the number of devices as well as the other restrictions on petitioner's usage, such as the prohibition on accessing sexually stimulating materials, that protect public safety and assist in his rehabilitation.

We analyze the special condition according to its ordinary meaning; we are not bound by the board's interpretation of the condition. *See Penn*, 365 Or at 637 (rejecting the board's proposed interpretation of a special condition as inconsistent with the ordinary meaning of the terms in the condition); *see also Schmult*, 306 Or App at 357-58 ("As for the board's position that 'computer' does not mean all computers, we reject that argument for similar reasons as the Supreme Court rejected the board's argument in *Penn*."). The problem with the board's argument in this case is that the condition, as currently drafted, does not, in fact, mandate that a supervising officer permit petitioner to access or use one computer and one cell phone. The condition states that "a supervised person *may* access or use one approved personal computer" and "a single approved cell phone" but that the supervised person "*must obtain approval*, from

the supervising officer, for *any* personal computer or cell phone *prior to access or use*." (Emphasis added.) The wording of the condition plainly requires a supervised person to obtain prior approval from their supervision officer before using any computer or cell phone. The special condition does not require the supervising officer to approve that use. The terms of the condition, as drafted, do not impose a limit on the supervising officer's discretion to deny access or use of a phone or computer. Moreover, because preapproval is required, that requirement contradicts the goal stated by the board in its administrative review response—to impose a condition that affirmatively "allow[s petitioner] to access both a cell phone and a personal computer."

A requirement that a supervised person obtain a supervising officer's prior approval was also present in the challenged special conditions in *Schmult* and *Crombie*. *Crombie*, 325 Or App at 314 (access to computers permitted with written preapproval of supervising officer); *Schmult*, 306 Or App at 352 (same). In considering the imposition of a similar computer condition in *Schmult*, we explained that there was "no reason that requiring a supervising officer's permission * * * before petitioner uses *any* computer for any purpose would be *essential* to advancing the board's goals of promoting public safety and assisting in petitioner's reformation," as set out in ORS 144.096(3)(d) and (f). *Schmult*, 306 Or App at 358 (second emphasis added). Moreover, the option of securing preapproval from a supervising officer does not significantly reduce the burden of the limitations on petitioner's computer use—as relevant to whether the board's decision to impose the condition appropriately balances the burden of the condition with its necessity in serving those statutory goals—because "[a]pproval from the supervising officer is entirely discretionary" and "unmonitored by the board[.]" *Crombie*, 325 Or App at 324-25. Indeed, in this case, the board specifically pointed to the "discretion" granted to petitioner's supervising officer and, when applicable, the sex offender treatment provider, "to establish how specifically this condition should be applied to you in your specific case." As in *Crombie*, the board does not suggest that it monitors or reviews the exercise of that discretion.

The board also argues that the prior approval requirement is "the only practical way to ensure that both petitioner and the supervisor know that petitioner is abiding by the restriction on number of devices." We are not persuaded that requiring prior *approval* from a supervising officer—whose discretion to withhold that approval is not limited by the board—is "the only practical way" to ensure petitioner's compliance with the various restrictions to which he is subject. As with the special conditions at issue in *Crombie* and *Schmult*, the other limitations on petitioner's usage of electronic devices undercut the board's argument. *Schmult*, 306 Or App at 357; *Crombie*, 325 Or App at 323-24. The supervising officer has broad discretion to monitor petitioner's usage of computers and cell phones, both by executing searches or by the use of monitoring software.

In its response to petitioner's request for review of the computer conditions, the board explained that petitioner used a dating application not "to cultivate a healthy, pro-social relationship" but, rather, "to locate and gain access to potential victims." That does not establish the necessity permitting the supervising officer discretion to deny petitioner access to or use of any phone or computer. To find that justification persuasive, the facts of this case would have to demonstrate a more compelling need than the facts of *Schmult* and *Crombie*. That is not the case. The petitioners' use of electronic devices and the internet in *Schmult* and *Crombie* was integral to their criminal offenses. The petitioner in *Schmult* used his access to a computer and the internet to show "pornography to his teenaged daughter to try to normalize his sexual abuse of her," to possess child pornography, and to "spy on at least one teenaged girl." 306 Or App at 356. The petitioner in *Crombie*, used his cell phone to "groom and communicate with a 13-year-old minor female whom [he] ultimately repeatedly sexually abused" and to send sexually explicit text messages to another 14-year-old girl. 325 Or App at 316.

Here, petitioner's criminal conduct was significantly less integrated with computers and electronic communication than the petitioners' conduct in *Schmult* and *Crombie*. Petitioner communicated with adult women by text message

and via a dating application. He used those communications to arrange in-person meetings at which he committed sexual offenses against three women. But his use of a phone or the internet is of a piece with the other common activities that were part of petitioner's conduct leading up to the sexual assaults—for example, petitioner also watched television and movies together with two of the women before he sexually assaulted them. Petitioner also googled how to get women to have a threesome. On this record, that single internet search does not establish the necessity of a ban on any computer or cell phone use for any purpose unless approved by the supervision officer in their discretion. The case-specific facts relied on by the board, however, may justify more tailored restrictions on petitioner's computer or phone access or use.[2]

The "Enhanced Computer Condition" imposed here is not meaningfully narrower than the conditions in *Schmult* and *Crombie* because it forbids access to or use of any computer or phone for any reason without prior approval in the supervising officer's discretion. Computers and cell phones are "ubiquitous in nearly every aspect of daily life[.]" *Schmult*, 306 Or App 350. The computer condition imposes a significant burden on petitioner without a corresponding showing of its necessity for accomplishing the statutory objectives of petitioner's reformation and the protection of public safety. Petitioner's ability to access and use personal computers and cell phones remains contingent on the prior approval of his supervising officer, and the "Enhanced Computer Condition" of PPS, as drafted, does not meaningfully limit the supervising officer's discretion to withhold approval.

---

[2] The board also points out that the condition, as presently drafted, is narrower in scope than the conditions at issue in *Schmult* (forbidding access to "all computers") and *Crombie* (forbidding access to all electronic devices that could be used for communication). *See Schmult*, 306 Or App at 352; *Crombie*, 325 Or App at 322. The scope of the condition before us is different—it forbids petitioner from accessing or using "personal computers" and "cell phones" and provides, by way of illustration, that petitioner may be authorized to use, "for example, [one] desktop computer, laptop computer, [or] tablet computer." Petitioner argues that that modification does not meaningfully narrow or constrain the scope of the condition. Because our decision turns on the fact that the condition prohibits all access to these devices absent prior approval by a supervising officer, we do not decide whether that change, standing alone, satisfies ORS 144.102(4)(a).

As applied to petitioner, a condition that prohibits accessing or using computers or cell phones exceeds the scope of the board's statutory authority under ORS 144.102(4)(a). Accordingly, we reverse the board's order and remand to the board for further proceedings.

Reversed and remanded.